WALTER CROOK v. DAVID S. COWAN.

If one send by mail an absolute and specific order for certain goods to a merchant who sells such goods, the latter need not reply by mail engaging to send them; the contract will be complete upon his at once complying with the order :

This is so even where the thing ordered must be manufactured by the merchant before it is sent, at least where it can be manufactured without much delay, *ex. gr.* in case of the making up of carpets, where the merchant is a carpet seller ; *Therefore*,

Where the defendant, who resided near Wilmington, sent, Dec. 10, 1866, by mail, an order to a carpet merchant of Baltimore for two carpets similar to those which the merchant had furnished to a friend of his, ("good three ply carpet, medium color," &c., &c., giving size and proportion of rooms : "I want good durable carpets, and wish you to have them made up; You can forward them to my address at Wilmington, N. C., *per* Express, C. O. D.," &c., &c ,) and the order was received Dec. 14th, and the carpets forwarded by Express, Dec. 21st, and duly received in Wilmington at the Express office : *Held*, that the contract was complete, there being no need that the merchant should have answered by mail, engaging to comply with the order.

By RODMAN, J. (*dissenting.*) Although no reply by mail assenting to the offer to buy be needed where the article is transmitted immediately, it is otherwise in all cases where the *preparation* of such article requires the lapse of time. Such lapse of time as is *reasonable* for the preparation of the article, if it be *unreasonable* for withholding notice of assent to the offer by the customer, leaves the latter unbound by the contract.

ASSUMPSIT, tried before *Russell, J.*, at December Special Term 1867 of NEW HANOVER Court.

The action was brought to recover the price of two carpets, the transaction in regard to which is presented in the following correspondence.

ROBESON, N. C., Dec. 10th, 1866.

WALTER CROOK, JR., ESQ., *Baltimore:*

SIR :—General R. of Wilmington, has kindly furnished me your name, and recommends your house.

I want similar carpets for two rooms, good three ply carpet, mediu m color, small figures. I would prefer no white in them. Description of rooms: No. 1, 14 feet 6 inches by 16 feet 3 inches square; No. 2, 14 feet 2 inches by 16 feet 3 inches square. For jams of chimney, four (4) pieces, one breadth, each piece (5, 8 in.) five feet eight inches long.

I want good durable carpets, and wish you to have them made up. You can forward them to my address at Wilmington, N. C., *per* Express, C. O. D., or else, advise me of the cost, and I will remit while you are having them made up. Number each as per description.

Yours respectfully,

D. S. COWAN.

This letter was received by the plaintiff upon the 14th of December.

The defendant, receiving no reply, sent the following telegraphic dispatch:

WILMINGTON, N. C., Dec. 26th, 1866.

(Received at Baltimore, December 26th:)

*To* WALTER CROOK, JR., *Baltimore Street:*

Have you received an order for carpets? If so, do you intend sending them?

D. S. COWAN.

The next communication was the following:

BALTIMORE, Jan. 16th, 1867.

MR. D. S. COWAN, *Wilmington, N. C.:*

DEAR SIR:—I have the pleasure to notify you that we have this day received advice from Adams' Express Company that the carpets ordered by you through letter dated December 10th, 1866, are at their office in Wilmington on hand, their notification having, up to date, received no reply. Be good enough to respond. The goods were shipped you December 21st, 1866.

Yours, &c.,

WALTER CROOK, JR.

ROBESON, N. C., Jan. 18th, 1867.

WALTER CROOK, JR., *Baltimore, Md.:*

DEAR SIR:—I was somewhat surprised on yesterday at receiving a notification of the fact that a roll of carpeting was in the Express office

for me. I declined to receive it, and cannot let it go back to you, without a word of explanation in justification of myself.

It was on or about the 10th December, 1866, that I wrote you ordering carpets. I received no acknowledgement of my letter, and was in doubt whether it ever reached you. On the 26th of December, I dispatched you a telegram from Wilmington to the following effect, to wit:

WALTER CROOK, JR., *Baltimore Street, Baltimore:*

Have you received an order for carpets ? If so, do you intend sending them ?

(Signed) D. S. COWAN.

The above copy I got from the original on file in telegraph office in Wilmington on yesterday. I called at telegraph office frequently from 26th Dec. to 2nd Jan. 1867, seeking a reply, but received none. Concluding that my letter had miscarried, and consequently you did not understand the dispatch, I bought carpets in Wilmington and had them made up. Agreeable to the above facts, I cannot think I am morally bound to take the carpets. Should you think differently, I will be pleased to hear from you.

Yours very respectfully,

D. S. COWAN.

Some other letters passed between the parties, presenting their respective views of the controversy, but they are not material here.

It was further in evidence that by general custom, known to all who had any dealings with the Express Company, the letters C. O. D. marked upon goods, means that such Company is not to deliver the goods without payment of the bill for the purchase money which accompanies them; and that the carpets sent to the defendant were so marked.

The counsel for the defendant requested the Court to instruct the jury:

1. That there was no *contract;*

3. That, if there was a contract, the failure of the plaintiff to reply to the original order of the defendant, and to his dispatch of Dec. 26, 1866, authorized the latter to believe that

the order would not be complied with, and that, so, the defendant was discharged.

The Court declined to give either instruction.

Verdict for the plaintiff, &c.    Appeal by the defendant.

*No counsel* for the appellant.
*Strange, contra.*

READE, J.  If one writes to another, who has not offered his property for sale, proposing to buy, the letter is of course nothing but an offer, and is of no force until the other answers and accepts the offer ; then the contract is made. But if one holds his property out for sale, naming the terms, and another accepts the terms, the contract is complete ; or, if one bids at an auction, and the hammer falls, the contract is complete; or, if one advertises, offering a reward for something to be done, as soon as the thing is done the contract is complete, and the reward is due.  So, in our case, the plaintiff held himself out as a carpet manufacturer and vender, and offered his carpets for sale, and invited purchases ; and when the defendant sent him the unconditional order for carpets, that was an acceptance of his offer, and the, bargain was struck, and the moment that the carpets were delivered to the Express, the agent designated by the defendant to receive and transport them and collect the bill, the delivery was made, and the property passed to the defendant.  But, if that were not so, our case is stronger than that.  Consider the case as if the first offer was made by the defendant to the plaintiff.  The defendant knowing that the plaintiff was a carpet vender, sent him an unconditional order for carpets, specifying the Express as the agent to receive and transport them, and to collect the bill, and the order was filled to the letter.  Thereby, the offer was accepted, the property in the carpets passed to the defendant,

CROOK *v.* COWAN.

and he became liable for the price, as for goods sold and delivered. The order was an offer, the filling the order was an acceptance; and an *offer* and an *acceptance* is the common definition of a contract.

The defence is put upon this ground: the defendant's letter to plaintiff was only an offer, there was no contract until the plaintiff accepted it and notified the defendant; and the notice ought to have been by mail, within a reasonable time.

The plaintiff says, that he did assent immediately upon the receipt of the order, and forwarded the carpets as soon as he could have them made up, which was within a reasonable time—seven days, and that this was all he had to do. The point of divergence between the plaintiff and defendant is, that the defendant says, the plaintiff ought to have notified him by mail that he had accepted the offer, and forwarded the goods; that merely filling the order, although in the exact terms thereof, was not an acceptance, without notice. The propriety of giving notice by mail, must depend a good deal upon the circumstances of each particular case;—as, if the order requires it, or, if the order is not sufficiently specific, and leaves something further to be arranged, or, if considerable time must pass in the manufacture of the article, or, if the route or means of transportation is not known, or the voyage long and dangerous, and the like. But if an offer and an acceptance—an unconditional and specific order, and an exact fulfillment, as in this case, does not complete the contract, how would it be possible to complete a contract by mail? A sends an unconditional order to B, and, instead of B's filling the order, he writes back that he accepts the order and will fill it, but in the meantime, A may have changed his mind, and lest he has, he must write back to B and so on, for ever. *Adams* v. *Lindsell*, 1 B & Ald. 681, is the leading English case, illustrating, and repudiating,

this circumlocution; and that case has been followed ever since both in England and America, as is said in 1 Parsons on Contracts, note p, page 483. In that case, it was said, speaking of the above rule, "If it were not so, no contract could ever be completed by post. For if the defendant was not bound by his offer, when accepted by the plaintiff, until the answer was received, then the plaintiff ought not to be bound until after he had received the notification that the defendant had received his answer and assented to it. And so it might go on *ad infinitum.*

We admit that the rule, that filling an order completes the contract, is confined to unconditional and specific orders. And, if the purchaser thinks proper, he can make his order as guarded as he pleases. He may say, "I want such goods,—can you furnish them? If so, at what price, and within what time? Inform me by return mail. I will pay if the goods arrive safe,—otherwise not,"—and the like. Then he will not be liable unless the terms are strictly complied with.

In the case before us, the order was unconditional and specific, and was complied with to the letter. The defendant did not ask the plaintiff to inform him whether he would fill the order. He had no doubt about it. It was the plaintiff's business to fill such orders, and the defendant had confidence in him. So far from requiring the plaintiff to notify him by mail, he impliedly informed him that he need not do so : Send the goods by Express, C. O. D., without more say ; and send the bill by Express for collection; or, if you are afraid to trust me, then, and in that case only, you may write to me and I will send the money, before you ship the goods,—is, substantially, what the defendant said in his order to the plaintiff. There was no use in informing the defendant by mail of the shipment of the goods, because the Express is as speedy as the mail; and there is certainly no

magic in sending by mail. And sending the goods is the best notification.

The defendant also complains that the plaintiff did not answer his telegram. The answer is, that neither the mail nor the telegraph had been designated as the means of communication, but the Express. And it was the defendant's misfortune, if not his fault, to go elsewhere than to the place designated, for information. His duty ended when he deliv ered the goods to the agent designated by the defendant, the Express, with the bill for the price to collect. The goods were at their destination—the Express office—when the defendant sent his telegram. He did not go to the Express office at all, and offers no explanation why he did not, but left the plaintiff to infer, as he seems to have done, that his purpose was to avoid the contract.

RODMAN, J., (*dissenting.*) The question in this case is, whether what took place between the plaintiff and defendant amounted to a complete contract of sale, or to a binding contract by the defendant to accept and pay for the goods, so as to enable the plaintiff to recover the price.

The letter of the defendant of December 10th, was merely an offer to purchase the goods named: it is called an *order:* but an order on a merchant or manufacturer for a specified article—that is, a request to sell the article to the writer— *can be* nothing but an offer to purchase. It does not bind the proposed vendor, until it is assented to by him; nor can it bind the proposed vendee, until the vendor himself becomes bound; a contract which binds only one of the parties, (except in certain special cases, as where one of the parties is an infant, &c.,) is an impossibility.

"A mere affirmation or proposition is not enough," "There must be a request on one side, and an assent on the other:" 1 Pars. Cont. 475, Chit. Cont. 9—15. "A contract

includes a concurrence of intentions in two parties, one of whom promises something to the other, who, on his part, accepts such promise. A pollicitation is a promise not yet accepted by the person to whom it is made:" 1 Pothier Obl., 4.

" It takes two to make a bargain," is a maxim of law, the soundness of which strikes the good sense of every one, so that it has become a common saying." Pearson, J. in *Spruill* v. *Trader*, 5 Jon. 41.

It is unnecessary to attempt to enforce so familiar a prin ciple by illustration ; but the decision of this case depends on bearing it in mind, and fairly applying it. The assent must be given in a reasonable time. If the proposition be by letter, the assent must be given by letter, by the first post on the next day, unless farther time be allowed by the proposition : 1 Pars. Cont. 483, note p ; *Dunlop* v. *Higgins*, 1 H. L. Cases, 381 ; *Mizell* v. *Burnett*, 4 Jon. 249 ; *Meynell* v. *Surtees*, 31 E. L. & E., 475.

The point of the case is, was the proposition of the defen- dant assented to by the plaintiff, so as to convert it from a mere offer into a binding contract ?

*First*, to put away what is not material: The letter from plaintiff to defendant, of 16th January 1867, was not such an assent, because it was not intended as such, and was not given in reasonable time, even if we admit that the defendant's original offer was kept open by his telegram of 26th December, for a reasonable time thereafter : *Mizzell* v. *Burnett*, and *Dunlop* v. *Higgins*, *ubi. sup.*

So that the question becomes at last, whether the delivery of the goods to the carrier on the 21st of December was such an assent. In considering this, it must be borne in mind, that the defendant never received any notice other than this, either that the plaintiff assented to his proposition to pur- chase and would send the goods accordingly, or that he had

complied with it by a delivery to the carrier, or any reply to his telegram of the 26th of December, inquiring if the plaintiff intended to send the goods.

The proposition, that the mere delivery of the goods to the carrier on the 21st of December was equivalent to an assent communicated to the plaintiff in a reasonable time, and completed the contract, so as to vest the property in the defendant, or to bind him to accept and pay for the goods, can only be maintained on one of two grounds :

1. That a compliance with the terms of a proposition to purchase goods that require to be manufactured, or in some way prepared for use, and which preparation must occupy a time more or less considerable, but greater than what would be a reasonable one within which to give an assent to the proposition, is a sufficient assent, or will suffice in lieu of such assent ; or,

2. That the carrier was the agent of the defendant to manifest such assent, and did manifest it, by receiving the goods.

*As to the first ground,* which seems principally relied on : When goods are sent in compliance with an order, and are accepted by the vendee, of course no question as to his liability for the price can arise. If they are sent immediately upon the receipt of the order, or within what would be a reasonable time for giving an assent thereafter, and a bill of lading or equivalent document is sent to the vendee, as is usually the case, or if he is informed of the arrival of the goods at their destination; that also is sufficient notice of the vendor's assent. Notice of the assent in due time is indispensable, but it is not material how or through whom it given. It is only when there is a delay in the transmission, beyond what would be deemed a reasonable time for the vendor's assent, either from a difficulty in collecting or preparing the goods, or from any other cause, that the question

whether a compliance with the proposition is equivalent to or dispenses with the vendor's assent, is likely to arise. In such a case I hold that mere compliance by preparing and sending the goods within what, considering the time necessary for the preparation, is a reasonable time *for that purpose,* but within what is an unreasonable time for the communication of the vendor's assent, is insufficient, and that the proposition to purchase must be assented to in a reasonable time, and notice of the assent given to the proposed vendee. It is from not noticing the distinction between cases in which a delay does or does not occur, that any difficulty in the decision of this case can arise, and attention to it will reconcile and explain every case in which it is held that a delivery to a carrier vests the property in the consignee, a doctrine which, properly understood, is incontestable. If the proposition were true, it would form so wide and important exception to the general and admitted rule, requiring a personal communication of assent to a proposing purchaser, that, as such, it could scarcely have escaped prominent notice by the able writers on the law of contracts with whose works the profession is familiar. Yet no such exception is found, and no case has been cited, and we may suppose none can be found, in which, in a case substantially like this, an assent like that which it is contended is sufficient in this case, has been so held. The contrary is expressly stated in 1 Pars. Cont. p. 475, note c, citing the cases of *Johnson* v. *Fessler,* 7 Watts 48, and *Ball* v. *Newton,* 7 Cush. 599.

There are many cases in which it has been held that upon an offer to guaranty, a compliance with the offer is not sufficient; notice must also be given to the proposing guarantor that his terms are accepted: 1 Pars. Cont. 478, note h, *McIver* v. *Richardson,* 1 M. & S. 557; *Mozley* v. *Tinker,* 1 M. G. & R. 692; *Cope* v. *Albinson,* 16 E. L. & E. 470;

CROOK *v.* COWAN.

*Shewell* v. *Knox*, 1 Dev. 404, 2 Pars. Cont. 13. These cases are strictly analogous. The same principle must necessarily apply to an offer to purchase goods, as to an offer to make any other contract.

In the case of an order for goods, such as in this case, where a certain time, more or less considerable, must be consumed in obtaining or manufacturing them, so that there is a delay in complying with the order, it would be unreasonable to hold that the party making the offer to purchase, was to remain ignorant during all such time, whatever its duration may be, whether or not the vendor had assented to his offer; and to remain bound while the other was loose; and finally to receive no other notice that his letter had been received and his offer assented to, than such as may be implied from a delivery of the goods to a common carrier. Instead of being only for a carpet, which, as it happened, required only ten or eleven days to be prepared for use, the offer might have been for a steam-engine, or other elaborate article which would require months in its fabrication; or, it might have been for an article of fluctuating value, which, if the rule contended for, were established, the vendor might legally send or not, according to his interest. The value or the character of the goods cannot change the principle of law requiring an assent to the proposal. To hold otherwise will be, in my opinion, to violate a recognized principle of universal commercial law, to encourage negligence and a wanton disregard of settled commercial usage; and to introduce a perplexing and injurious uncertainty into a very important class of commercial dealings.

But it is said, it was the duty of the Express Company to have given notice to the defendant of the arrival of the goods. This may be conceded. But the question would still remain, whether such notice would have been a sufficient and legal assent by the plaintiff. I think it would not have been

because not in reasonable time *for that purpose.* Moreover, if the Express Company neglected their duty in this respect, to whom is it liable? To the owner of the goods, certainly; but the question of ownership is the one in controversy, and it is a begging of the question, to assume that the defendant could recover of the Company for such omission.

Again, it is said, it was the duty of the defendant to have called at the Express office in Wilmington, where he would have heard of the arrival of the goods. But how could this duty be thrown on the defendant, until he had received an answer to his letter to the plaintiff? Was it not more convenient for the plaintiff to answer that letter, than for the defendant and all others similarly situated, to call daily at the Express office, for an indefinite time, inquiring for goods which they had received no notice would be sent? Is this the common usage in the great commercial cities? If it is, it could scarcely fail to be well known to us from the inconvenience it would occasion. How long was the defendant to continue calling? I think these questions cannot be answered without displaying the erroneous conception on which the whole argument for the plaintiff is founded.

Again, it is said, the plaintiff is a dealer in carpets, and offered to all the world to sell them; and that the letter of the defendant, therefore, instead of being an offer to purchase, was, in fact, an assent to the plaintiff's offer to sell. This principle, it is true, applies to a class of cases in which a public offi... dividual, offers a certain reward to any an offender. In such cases, the terms , and the doing the act for which the re the offer is revoked, and notice that s. But those cases are *sui generis,* and a o the general rule, which arises out of ving a previous assent to the offer. iple ever applied to the case of a

merchant or manufacturer? Is such an one so notoriously bound to manufacture and send his goods to every one who will send him an order, C. O. D., that the person sending such an order, has no occasion to look for a reply to his letter, but may confidently go to the Express office to get them in a reasonable time for their manufacture after the receipt of his order in due course? How can he know how long it will take to manufacture the goods, or that the merchant will trust him to pay on delivery? The goods may be spoiled in the course of manufacture for the use of all others. The merchant or manufacturer may be out of the particular goods, or he may have quit business, or there may be many other reasons to prevent a compliance. There is no proof that the plaintiff in this case offered his goods for sale, otherwise than as merchants and manufacturers in general do, and it will probably take the mercantile community somewhat by surprise, to discover that the consequences of a general advertisement are such as are supposed.

*As to the second ground*: All the reasons which support the necessity for an assent to an offer to purchase, imply that the notice of the assent must be to the proposed purchaser in person, or to some agent appointed by him *for that purpose.* Did the defendant appoint the Express Company his agent for that purpose? The defendant in fact never made the carrier his agent for any purpose, even to receive the goods—*he offered to do so;*—but to say that this offer, unaccepted by the plaintiff, was a complete and effective contract for that purpose, is to beg the very question we are discussing, and to confound all distinction between an offer to contract, and a completed contract.

But, waiving that point, it seems clear that the defendant never made, or intended to make, the carrier his agent to receive notice of the acceptance by the plaintiff, of his offer to purchase. Brown, (Actions, 200,) takes the distinction

thus: " *Where the sale is complete,* so that the vendee is bound at all events to receive the goods, or, if he do not, is liable to an action by the vendor for the price, a delivery by the vendor to the carrier, is, in law, a delivery to the vendee," &c. " But where the sale is not complete, (as in the case of a sale of goods above the value of 10 L., where the provisions of the Statute of Frauds have not been complied with,) a delivery to a carrier not named by the vendee, is not sufficient, as there must be an acceptance by the vendee, (within the meaning of the Statute,) as well as a delivery by the vendor. And an acceptance by a carrier not named by the vendee, is not an acceptance by him." He says that the question in a case where the carrier was named by the vendee had not been decided, but in a note he intimates the opinion that such naming would make no difference. Certainly the mere offer to authorize the carrier to receive the goods in this case, cannot be construed to confer on the carrier, the additional power of completing the sale. The naming the carrier simply as carrier, can confer on him no power beyond that of carrying the defendant's goods. Whether or not any particular goods were the defendant's, must depend on the proof of the contract between him and the plaintiff, and is independent of any act of the carrier.

It being thus shown that the defendant by naming the carrier gave him no authority to contract for him, or to receive the plaintiff's assent to his offer; did any such authority result simply from his employment and duty as a public carrier ? If such be the power of a public carrier, and such the result of a mere delivery of goods to him, why has it ever become a general, if not universal, usage, for a consignor to take from the carrier a bill of lading receipt or equivalent document, and to forward it to the consignee ? If the carrier is so far the agent of the consignee, that a delivery to the carrier must be presumed to be known *eo instanti* to the

CROOK *v.* COWAN.

assignee, such a custom would for most of its purposes be unnecessary, and could never have grown up. That it is a usual, and ordinarily an indispensable duty of a consignor on a shipment by sea, is too notorious to need, or to find, support from decisions. It is also usual on a shipment by river or canal: 1 Pars. Ship. and Ad. 180; *Dows* v. *Green*, 16 Barb. 72; *Bryans* v. *Nix*, 4 M. & W. 775. Such a document is the symbol of property : without it, in general, upon a shipment, the property does not pass to the consignee, and certainly a consignor who omitted to take and forward it, would be liable to the consignee for all damages which might result. That the same rule applies on land, we have high authority. Mr. Parsons says: (1 Ship. & Ad. 186) " It is now quite common for our railroad companies and perhaps other carriers to give a receipt closely resembling a bill of lading, &c." And Chancellor Kent (2 Com. 499) says : " A delivery to any general carrier, when there are no specific directions out of the common usage, is a constructive delivery to the vendee ; and the rule is the same, whether the goods be sent from one inland place to another, or beyond sea. The delivery to the agent must be so perfect as to create a responsibility on the part of the agent to the buyer, and if the goods be forwarded by water, the vendor ought to cause them to be insured if such had been the usage, *and he ought in all cases to inform the buyer with due diligence, of the consignment.*

In *Clarke* v. *Hutchins*, 14 East. 475, Lord Ellenborough says that when a vendor receives an order for goods to be forwarded by a carrier, it is his duty to deposit them with the carrier in the usual and ordinary way, and with the usual precaution, and to do whatever is necessary to secure the responsibility of the carrier for the safe delivery of the goods, and to give the purchaser an indemnity in case of loss. In *Buckingham* v. *Levi*, 3 Camp. 414, it was held to be the

duty of a vendor in such a case to take a receipt, and that a mere delivery without taking a receipt, and (as is implied) sending it to the vendee, would not charge the vendee. See also 1 Pars. Cont. 533.

If the necessity for this custom were not proved by its existence, many reasons might be assigned for it. Without some document of title, (bill of lading, receipt or correspondence, *Bryans* v. *Nix, ub. sup.*) the consignee might have a difficulty in obtaining possession of the goods ; he might want to insure them during their transit, or to sell, or to borrow money on them. The rule must be the same whether the goods be a carpet, or many bales of cotton. Neither can it make any difference whether the voyage be a short one, as from Baltimore to Wilmington, or a comparatively long one, as from San Francisco to New York; or whether it be wholly by land or water, or partly by both. The rules of law are founded on deeper principles than to be affected by such accidents as the nature of the highway, or of the vehicle.

PER CURIAM.                                    Affirmed.