C. H. GASKINS v. SOUTHERN RAILWAY COMPANY et al.

(Filed 15 September, 1909.)

**Carriers of Freight—Consignor and Consignee—Title—Evidence—Nonsuit.**

> The title to goods shipped under an open bill of lading *prima facie* vests in the consignee; and when the consignor, in his action for damages to the goods against the carrier, fails to offer evidence upon his allegation that he had retained the title which is denied, defendant's motion to nonsuit should be granted.

APPEAL from *Peebles, J.,* May Term, 1909, of BEAUFORT.

This action was brought against the defendants, the Atlantic Coast Line Railroad Company and the Southern Railway Company, to recover damages for injury to a soda fountain, which was delivered by the plaintiff to the first-named company at Grifton, N. C., to be shipped *via* Selma, N. C., to J. C. Reitzel, at Liberty, N. C., a station on the Southern Railway. When it was delivered for shipment the soda fountain was in good condition. The plaintiff alleges in his complaint "That the soda fountain and fixtures were his property, and by agreement with

J. C. Reitzel, the consignee, they were to remain his property until accepted and paid for by Reitzel." This allegation was denied in the answer of the defendant, and there was no evidence to sustain it, it appearing only that the fountain and its fixtures were shipped under an open bill of lading, which was issued by the Atlantic Coast Line Railroad Company to the plaintiff.

The court submitted issues to the jury, which, with the answers thereto, were as follows:

"In what sum, if any, is the defendant Atlantic Coast Line Railroad Company indebted to the plaintiff?" Answer: "Twenty dollars."

"In what sum, if any, is the defendant Southern Railway Company indebted to the plaintiff?" Answer: "Two hundred and fifty dollars."

It appeared that the ice shaver was damaged while the fountain was in the possession of the Atlantic Coast Line Railroad Company, and the defendant did not appeal from the judgment for the amount assessed by the jury against it for said damage. The evidence tended to show the following facts:

The Atlantic Coast Line Railroad Company has a "line of track" from Grifton to a point beyond Selma, and the Southern Railway Company has a "line of track" which crosses the line of its co-defendant at Selma and extends beyond that place. The two companies receive and deliver freight at Selma from and to each other. This statement is taken from the answer of the Southern Railway Company, which was in evidence. The bill of lading issued to the plaintiff by the Atlantic Coast Line Railroad Company was also in evidence. C. H. Gaskins testified in behalf of the plaintiff as follows: "I helped to crate the property; it was in perfect condition and worth $285. It was delivered to the Atlantic Coast Line Railroad Company at Grifton for transportation to Liberty, N. C. I last saw the property in the warehouse of the Atlantic Coast Line at Grifton, about sixty days after it had been shipped. I only saw the top and end of the fountain on its return. The agent objected to my examination. The marble was broken all to pieces; the ice shaver was missing. The ice shaver was worth $22.50. I know as a fact that the fountain started to Liberty. I do not know whether it ever got there." At the close of this testimony the defendant Southern Railway Company moved to nonsuit the plaintiff. The motion was overruled and an exception entered.

J. A. Spiers, a witness for the Atlantic Coast Line Railroad Company, testified as follows: "This shipment was received at Selma, 12 March, 1908. I delivered it to the Southern Railway Company. The wheel to the ice shaver was in bad condition."

At the close of all the testimony the defendant Southern Railway Company renewed its motion to nonsuit, which being overruled, it excepted.

The court charged the jury as follows: "The agent at Selma shows delivery of the fountain to the Southern Railway Company on 12 March, in good condition, with the exception of damage to the ice shaver. (If you believe that the Atlantic Coast Line Railroad Company delivered the property to the Southern Railway Company at Selma in good condition, that would put the burden on the Southern Railway Company to show delivery in good condition at the point of destination. If you believe the testimony, you will assess the damage to the ice shaver against the Atlantic Coast Line Railroad Company and the balance of the damage against the Southern Railway Company.) You cannot give against the Southern Railway Company more than $262.50 damages. You are not bound to give plaintiff the amount of damages demanded by him."

The Southern Railway Company excepted to that part of the charge in parentheses. There was a motion for a new trial, which was denied. Judgment was entered upon the verdict, and the Southern Railway Company excepted and appealed, assigning errors as follows:

1. That the court erred in refusing the motion to nonsuit.

2. That there was error in the part of the charge to which exception was taken.

*W. C. Rodman* for plaintiff.

*W. B. Rodman, R. G. Lucas* and *J. H. Pou* for defendant.

WALKER, J. It appears in this case that the fountain was delivered to the carrier by the plaintiff, who had sold it to Reitzel, and who received from the carrier an open bill of lading, by which the latter agreed to transport and deliver the fountain to the consignee, Reitzel, at Liberty, N. C., the shipment to be made over the lines of the two defendants. The case, therefore, is governed by the principle settled by this Court in *Stone v. Railroad,* 144 N. C., at p. 228, and *Manufacturing Co. v. Railroad,* 149 N. C., 261. In the former of these cases we held it to be "undoubtedly true that in the absence of any suggestion that the goods were not shipped 'open,' the delivery to the carrier taking a bill of lading to the consignee vests in the consignee the title to the goods, making the carrier liable to him for failure to transport and deliver. 'Prima facie the consignee is the owner of the goods in transit, the property therein vesting in the consignee upon delivery to the carrier, and he only can sue the car-

rier for nondelivery, though a receipt was given to the consignor. The carrier is entitled to consider and bound to treat the consignee as such owner, unless it is advised that a different relation exists, or unless notice of such fact is to be implied from the manner of shipment, as when goods are sent C. O. D.' Moore on Carriers, 188; Tiffany on Sales, 195; *Crook v. Cowan,* 64 N. C., 743; *State v. Patterson,* 134 N. C., 612; *Ober v. Smith,* 78 N. C., 316."

In the latter case the doctrine was thus stated: "It is common learning that when the vendor delivers an article to the common carrier to be transported by the usual route to the vendee, taking an open bill of lading, the title to the article passes to the vendee or consignee. This is true, although by the terms of the sale the vendee is to pay cash. For an injury to an article while in transit, or delay in transportation or delivery, the carrier is liable to the consignee. *Stone v. Railroad,* 144 N. C., 220."

The case of *Stone v. Railroad* was approved in *Cardwell v. Railroad,* 146 N. C., 218, in the following language: "When goods are delivered to a common carrier for transportation, and a bill of lading issued, the title, in the absence of any direction or agreement to the contrary, vests in the consignee, who is alone entitled to sue, as the 'party aggrieved,' for the penalty given by section 1467, Revisal. This is undoubtedly a correct decision, applying, as stated, where it appears that goods are shipped and the bill of lading taken to a consignee, without more."

If the plaintiff had shipped the fountain and taken a bill of lading requiring it to be delivered "to his order," or had retained the title and control of the fountain in any other way, he would be entitled to recover for any damage to the property or for any delay or other default of the carrier. He alleges, it is true, in his complaint, that he retained the title, but this allegation is denied by the defendant, and there was no proof to sustain it, and we must conclude, therefore, that there was no agreement with the carrier or the consignee to prevent the application of the ordinary rule which we have stated. If the plaintiff can show in another action that he retained the title to the fountain, he will be in a position to sue for any breach of contract by the defendant and recover the damages to which he may be entitled. We do not consider the other questions debated before us, for the reason that upon the record and the case, as they now appear, the court erred in refusing to sustain the motion for a nonsuit and dismissing the action.

Action dismissed.