## G. OBER & SONS v. WILLIAM H. SMITH.

*Contract—Vendor and Vendee—Delivery to Carrier—Bill of Lading.*

1. As soon as an order for goods is accepted by the vendor, the contract is complete without further notice to the vendee; and such contract is fully performed on the part of the vendor by the delivery of the goods in good condition to the proper carrier.

2. A delivery to a carrier designated by the vendee is of the same legal effect as a delivery to the vendee himself; if no particular route or carrier is indicated by the vendee, it is the duty of the vendor to ship the goods ordered "in a reasonable course of transit."

3. The fact that no bill of lading was sent to the vendee does not affect the right of the vendor to recover the price of the goods.

(*Crook* v. *Cowan,* 64 N. C. 743, cited and approved.)

(REDMAN, J. *Dissenting.*)

CIVIL ACTION, tried at Spring Term, 1877, of HALIFAX Superior Court, before *Buxton, J.*

The plaintiffs brought this action to recover the price of a certain amount of guano which they had sold to the defendant. The material facts found by the Referee to whom the case was referred, are these: The plaintiffs manufacture and deal in guano in the City of Baltimore, and the defendant was engaged in farming near Edwards' Ferry on the Roanoke River in North Crrolina, and one Shields was the plaintiffs' agent for selling guano in said State. Early in April, 1873, the defendant asked said agent if he could fill an order for guano in time for the planting season of that year, who replied that he did not know, but if the defendant would take the chances of getting it in time, he would order it of the plaintiffs. The defendant told him to order it "any way," and have it consigned to him (defendant) at Edwards' Ferry. Accordingly on the 12th of the same month the plaintiffs delivered the article ordered

to the Baltimore Steam Packet Company, at Baltimore, con-- signed to the defendant at Edwards' Ferry. The guano was, shortly thereafter and in a reasonable course of transit, put on board the Steamer " Silver Wave " then making regular trips on the Roanoke River, and in such trips pass- ing said Edwards' Ferry.  At the time of the shipment the plaintiffs forwarded a bill of lading to said agent, but neither one presented the bill of lading to the defendant,. who had no knowledge of the shipment until the following November when payment for the guano was demanded. There was no warehouse at said Ferry, and what became of the guano does not appear, except that it was landed at some point on said River.  The defendant never received it, and bought other guano in its place.  Sometime after the shipment, whether before or after the purchase of other guano, does not appear, the defendant paid said agent the freight on said guano.  He was in the habit of paying large freight bills, and having confidence in the agent, he paid without much scrutiny.  In regard to the quantity, quality, price and name of the article, the order of the defendant. was definite, and in these respects it was strictly complied with by the plaintiffs.

Thereupon the Referee held that the defendant was not liable, and His Honor sustained the ruling, and the plain- tiffs appealed.

*Mr. Spier Whitaker*, for plaintiffs.
*Mr. T. N. Hill*, for defendant.

FAIRCLOTH, J.  (After stating the facts as above.)  Upon these facts it is our opinion that as soon as the order or prop-- osition of the defendant was accepted, the contract was com- plete without further notice, and that it was fully performed on the part of the plaintiffs when they delivered the guano in good condition to the Steamboat Company, when the

title vested immediately in the defendant, and that conse-- quently the plaintiffs ought to recover. This rule would be varied by a different understanding or agreement, for there is no rule of law to prevent the parties in cases like the present from making whatever bargain they please; and if it appears from the conduct of the parties or from circumstances that either party intended otherwise, then the effect would be the same. If it appeared that the defendant intended no contract until notice of acceptance of his proposition, or that he intended to assume no liability until the plaintiffs delivered the goods at the place designa-- ted, or that the vendor intended to control the goods and to retain the *jus disponendi* by sending a bill of lading to his agent or to a third person, with instructions not to deliver until the goods are paid for, then in such cases, the title would not vest in the purchaser by the delivery to the carrier. The authorities are numerous, both English and American, to the effect that a delivery of goods to a carrier designated by the purchaser, is of the same legal effect as a delivery to the purchaser himself, and that it is not necessary that he should employ the carrier personally, or by some agent other than the vendor. If, however, no particu-- lar route or carrier is indicated by the vendee, then it is the duty of the vendor to ship the goods " in a reasonable course of transit," which was done here; and when he has so delivered the goods to the carrier, his duty is discharged, and if the goods are lost, the purchaser is bound to pay him the price. If it appeared that plaintiffs failed to comply with instructions in any material respect, or that any act or instruction of theirs contributed in any way to the non-delivery at the proper destination, then they could not recover; but it is manifest that the non-delivery was not owing to the negligence of the plaintiffs, and was probably occasioned by the fault of the carrier. It is contended, however, that the plaintiffs cannot recover, because they

sent no bill of lading to the defendant.  This fact does not alter the contract.  Such bills as the *indicia* of property are useful and convenient for transfers and other commercial purposes, but they are not essential in contracts of sale and delivery like the present; and it is to be noted that a bill of lading was sent to the agent through whom the defendant's order came to the plaintiffs.  The principle of this case was decided in *Crook* v. *Cowan*, 64 N. C. 743.

There is error.  Judgment will be entered in this Court in favor of the plaintiffs for the debt and costs.

RODMAN, J. *Dissenting.*  I cannot concur in the opinion of the Court.  But for that opinion, I should have thought the question too plain for doubt.  My view is this.  The defendant, through the agent of the plaintiffs, .whom he made his own agent for the purpose of communicating his proposition to the plaintiffs, proposed to buy of the plaintiffs five tons of guano on a certain credit.  An acceptance of his offer was never communicated to him until about six months afterwards, when he was called on to pay for it.  He never received it.  In the interval between the offer to buy and the demand of payment, the guano had been delivered at Baltimore to a common carrier, consigned to the defendant at Edward's landing on the Roanoke River, and in some unknown way and at some time unknown, lost or destroyed.  The doctrine is elementary, and I take, it, is not doubted by any body, that an offer to buy does not constitute a sale or a contract of any sort, until it is accepted, and the acceptance made known to the proposed buyer.  While I suppose that this principle is not doubted, it is so important to have, and bear in mind, a clear conception of it, that I cite a few lines from Benjamin on Sales, respecting it.

"To constitute a valid sale there must be a concurrence of the following elements;  1st. Parties competent to contract;  2nd. *Mutual assent,* &c. § 1.  But the assent must, in order

to constitute a valid contract, be mutual and intended to bind both sides. It must also exist at the same moment of time. A mere proposal by one man, obviously constitutes no bargain of itself. It must be accepted by another, &c.," § 39. See also § 41.

Where no time is limited for acceptance of the offer, it should be accepted if at all within a reasonable time, and unless it is so accepted, and *the acceptance notified* to the person making the offer, he will not be bound. METCALF, J in *Craig* v. *Harper*, 3 Cush. 158, 160. See also the other cases cited in note Q. to § 41, of Benjamin on Sales.

I do not conceive it to be necessary to accumulate authorities on this point that an assent is nothing until it is communicated, but as it is the foundation of my opinion, and although admitted in the opinion of the Court, as an abstract principle, seems to be practically disregarded in coming to its conclusion. I will refer to the familiar cases of *Linsdell* v. *Adams*, 1 B. & Ald. 681; *Dunlop* v. *Higgins*, 1 H. L. Cases 381, and others of that class relating to contracts by letters, which may be found in all the text books. All these cases assert that until the assent is communicated, there is no sale; they differ only as to whether the assent is communicated when the letter accepting an offer is deposited in the post office, or not until it reaches its address. They agree that until one or the other takes place, the property does not pass, and the offer may be withdrawn. See Metcalf on Contracts, 14; and 3 Johns 534; 3 Cush. 158; 8 Allen 566.

No doubt the assent may be communicated by sending the article; but it is not thus communicated until the article is received; and the property and risk are in the shipper until it is received, and if it be lost, the loss is his. In my opinion there never was a completed sale of this guano to the defendant, no property in it was ever in him, because

it was lost before he was informed of the acceptance of his offer by the plaintiffs.

2. It is said however that the defendant was notified of the acceptance of his offer, by the delivery of the guano consigned to him, on board the steamer "Silver Wave" a common carrier, at Baltimore within a reasonable time after the receipt of his offer, and this is the main question in this case. I agree that the delivery would have passed the property to the defendant, and made him liable for the price, if he had ever received the article or *if at the time a bill of lading had been forwarded. to him*, and perhaps, even if a notice of the acceptance of his offer, and of the shipment had been sent to him. But I cannot believe that in the absence of any notification whatever of the acceptance of his offer, otherwise than by the delivery to the common carrier, the property passed to the defendant, so as to make him responsible for a subsequent loss, or that he became bound for the price. It seems to me that such a rule would be unreasonable and unjust. The plaintiffs assented to the offer, but their assent not being communicated to the defendant, was a mere secret assent which amounted to nothing. If the property had passed by a communicated assent, then the plaintiffs would have been the defendant's agent to ship the guano; the master of the steamer would have been the defendant's agent to receive it; and any loss not insured against, would have been their loss. But the master of the steamer had never been made the agent of the defendant *to receive the plaintiffs' acceptance of his offer to buy.* No authority was cited on the argument, my learned brother refers to none, and I have found none, and I therefore feel justified in assuming that none can be found, which holds that a common carrier is the agent of one who offers to buy, to receive notice of the acceptance of his offer, when no notice of such acceptance is otherwise communicated to him and the goods are never actually delivered. It seems to me

that the doctrine that he is *an agent for that purpose,* is altogether new, and unknown to the commercial law. What few authorities bearing on the question I have found are opposed to it.

A bill of lading is the ancient, usual and almost constant *indicium* of property in goods shipped ; and that, or some equivalent document, is absolutely necessary to enable a vendee to dispose of the goods before arrival, or to enable him or his vendee to demand them from the master of the ship, or to protect the master in delivering them. It is not necessary to say that the taking and mailing to the vendee of a bill of lading is necessary to vest in him the property in the goods shipped. It may be that an assent to his offer to buy, communicated to him and followed by a delivery to a carrier, would be sufficient ; and where no bill of lading is taken, the production of a notice of such an acceptance, might justify the master in delivering the goods to the vendee, just as his knowledge of the fact of the sale, acquired in any other way would, for a carrier may always deliver goods to their true owner. But it seems clear, that when a supposed vendee has nothing to show an acceptance of his offer, and no document of title whatever, even although no bill of lading had been signed by the master, he is not in a position to demand the goods from the master, and the master would deliver them at his own risk.

*A fortiori,* when the shipper does take a bill of lading as he did in this case, the master would deliver the goods to any one but the holder at his peril, and no one but such holder (in this case the agent of the plaintiff) would be entitled to demand them. *Lickbarrow* v. *Mason* 2 T. R. 63 Smith's L. C. notes.

As no notice was ever given to the defendant that his offer was accepted, and a bill of lading was sent to the plaintiffs' agent, which was never delivered to the defendant, and of which he was never informed, the property never

vested in him, and he was never liable for the price. The plaintiffs could have had no object in sending the bill to their own agent instead of the defendant, except to prevent the property from vesting in the defendant, until the agent thought proper to deliver the bill to him.

Mr. Benjamin, after stating the general rule that a delivery to a carrier is a delivery to the purchaser, says in § 694; "But the vendor is bound when delivering to a carrier to take the usual precautions for insuring the safe delivery to the buyer." He cites the case of *Clarke* v. *Hutchins*, 14 East 475, in which the vendor had neglected to inform the carrier of the value of the goods, in consequence of which the vendee was disabled from recovering from the carrier upon their loss, and it was held, that the vendor could not recover their price; that the vendor had not made a delivery of the goods, not having "put them in such a course of conveyance as *that in case of a loss, the defendant might have his indemnity against the carriers.*"

Kent (vol. 2 p. 500) after saying that a delivery to a general carrier is ordinarily a delivery to the vendee, proceeds; " But if there be no particular mode of carriage specified, and no particular course of dealing between the parties, the property and the risk remain with the vendor while in the hands of the common carrier. (*Coates* v. *Chaplin*, 2 Gale & Davison, 2 B 552). The delivery to the agent must be so perfect as to create a responsibility on the part of the agent to the buyer, and if the goods be forwarded by water, the vendor ought to cause them to be insured if such has been the usage, *and he ought in all cases to inform the buyer with due diligence of the consignment and delivery.*" For this last proposition he cites Bell on the Contract of Sale, a Scotch work not accessible to me ; but the good sense of the rule, independent of the authority of Bell and Kent, certainly commends it to adoption.

In 1 Chitty on Contracts, 11 Am. Ed. p. 613, it is said ;

OBER *v.* SMITH.

"But if the goods be lost, delivery to a carrier is not sufficient to charge the vendee in an action for the price thereof, unless the vendor exercise due care and diligence, so as to provide the vendee with a remedy over against the carrier; as if he neglect to book, or to take a receipt for the goods," &c. It is here clearly implied, that he must send the receipt to the vendee in order to charge him; for if the vendee is never informed of the receipt, how can it benefit him?

In this case the usual precaution would have been to take a bill of lading which the vendor did, and send it to the vendee which he did not. By his failure to furnish the defendant with any evidence of property in the goods, he deprived him of all means of indemnity against the carrier. The defendant is compelled to pay for goods that he never received, and never was informed that he had any property in, and that in fact, as I think, he never had a property in. If the plaintiffs had conformed to the known and familiar usages of trade, the defendant would either have received the goods, or would have had redress against the carrier. It is said however that he could have sued the carrier and recovered upon the proof made in this case. Suppose for a moment that he might; but was he compelled to pay for the goods and take on himself the burden of an uncertain suit? I think not, and that the consequences of the plaintiffs' neglect to observe the known usages of trade, should fall on themselves. But the defendant never could have recovered in a suit against the carrier, because the property in the goods was never vested in him.

The rule now sought to be introduced would be most inconvenient. As the defendant never received notice that his offer had been accepted, he had a right to presume that it had not been. He was under no duty to watch the arrival of vessels at the landing to which he had directed the guano to be consigned. If that duty laid on him at all, it must

20

have adhered indefinitely.   Every man who writes or causes
to be written a letter requiring a reply, may reasonably be
required to inquire for the reply at his post office in due
course of post.   And every man who has been informed that
goods have been shipped to him, may reasonably be required
to take notice, for a reasonable time, of the arrivals at the
port of consignment; but when he has received no such in-
formation, and has no reason to think that any goods have
been shipped to him, it seems almost absurd to demand of
him to be constantly on the look out for an indefinite time,
in the language of the ancient subpœna in equity, " neglect-
ing all other business."

It seems to me that the introduction into commercial law
as it has heretofore been understood, of what I cannot help
thinking a novel and unreasonable principle, will not pro-
mote the interests of either agriculture or commerce.

PER CURIAM.                              Judgment reversed.