GROCERY CO. v. RAILROAD CO.

(Filed November 15, 1904).

1. ISSUES—*Trial.*

Where the issues submitted are sufficient, the refusal to submit those tendered by defendant is not error.

2. CARRIERS—*Penalties—Bills of Lading.*

In an action to recover a penalty against a carrier for failing to ship one of four packages consigned for shipment under a single bill of lading, the defendant is estopped to claim that the mismarking of three of the packages was a sufficient excuse for failing to ship the fourth.

3. STATUTES—*Penalties—The Code, secs. 3764, 1967, 1764, 1767—Acts 1901, ch. 634—Acts 1903, ch. 590.*

The repeal of a statute does not affect an action brought thereunder, before the repeal, for any penalty incurred.

4. CARRIERS—*Penalties—Police Power—Railroads.*

A statute providing a penalty for failure or delay in the shipment of freight is valid.

ACTION by the Lexington Grocery Company against the Southern Railway Company, heard by *Judge O. H. Allen* and a jury, at April Term, 1904, of the Superior Court of DAVIDSON County.

This is an action to recover the statutory penalty for failure to ship within the time limited by the statute a box of nutmegs, which with three other separate packages of goods was delivered to the defendant at High Point for shipment on December 12, 1902. The defendant issued one bill of lading including the four packages. Its material parts are as follows:

"Received by the Southern Railway Company at High-Point Station, December 2, 1902, from Lexington Gro. Co.,

the property described below, in apparent good order. * * * Articles: 1 box raisins, weight 25 pounds; 1 box cakes, weight 25 pounds; 1 box nutmegs, weight 3 pounds; 1 pkg. 4 caddies tob., weight 10 pounds. Rel. Recd. in Rain. Consignee: M. E. & S. E. Allen. Destination: Franklinville, N. C. Consignee's address as information only, and not for purpose of delivery."

The box of nutmegs was correctly marked to M. E. & S. E. Allen, Franklinville, N. C. The defendant introduced evidence tending to show that the other three packages were erroneously marked to M. E. Allen, Ashboro, N. C., and were shipped to that place. The box of nutmegs was not shipped at all.

The issues and answers thereto are as follows:

"1. Did defendant receive from plaintiff for shipment the four packages of goods mentioned in the complaint? Ans. 'Yes.' "

"2. Were the four packages of goods delivered by plaintiff to the defendant company at High Point properly addressed to M. E. & S. E. Allen, Franklinville, N. C., or any of them, and if any, which ones? Ans. 'Yes, as to the nutmegs.' "

"3. Did the defendant company fail to ship the said goods, or any of them, from High Point after December 7, 1902? Ans. 'Three packages December 10, 1902, to Ashboro; nutmegs not shipped.' "

"4. What was the value of the goods at the time of their delivery to the defendant? Ans. '$17.07.' "

"5. What was the value of the goods at the time they were tendered to the plaintiff? Ans. '$7.00.' "

"6. How much, if any, is plaintiff entitled to recover of defendant as a penalty for failure to ship said goods? Ans. '$320.' "

The parties contended that the first, third and fifth issues

should be answered by his Honor, and that the sixth issue should also be answered by him as a matter of law upon the findings of the jury on the second and fourth issues. The defendant tendered issues which were refused by the Court.

From a judgment for the plaintiff the defendant appealed.

*McCrary & Ruark* and *F. C. Robbins,* for the plaintiff.
*Glenn, Manly & Hendren, Walser & Walser, F. H. Busbee* and *A. B. Andrews, Jr.,* for the defendant.

DOUGLAS, J., after stating the facts. As the issues submitted appear to us to have been sufficient, we see no error in the refusal of his Honor to submit those tendered by the defendant. The defendant's prayers for instruction were properly refused. The defendant contends that the four packages constituted one shipment, and that the mismarking of three of them was sufficient excuse for not shipping the fourth. A sufficient answer to this contention is that the defendant shipped to Ashboro the three packages that were wrongly marked, and failed to ship the package that was correctly marked in accordance with the bill of lading. The packages were in fact separate and distinct, and it does not appear that retaining the nutmegs helped or could help the defendant to find the three packages that it had already shipped to Ashboro. The failure to ship that package is without legal excuse, and clearly comes within the letter and spirit of the prohibiting statute.

The defendant again contends that the penalty, if any, has been incurred, comes within the provisions of chapter 590 of the Acts of 1903, and not under chapter 634 of the Acts of 1901.

A brief review of the legislative history of penalties for the non-shipment of freight may serve to illustrate the intent and spirit of the law. They apparently originated with the

Act of March 22, 1875, being chapter 240 of the Acts of 1874-'75. Section 1967 of The Code is an exact copy of the second section of the said act, and is as follows: "It shall be unlawful for any railroad company operating in this State to allow any freight they may receive for shipment to remain unshipped for more than five days unless otherwise agreed between the railroad company and the shipper, and any company violating this section shall forfeit and pay the sum of twenty-five dollars for each day said freight remains unshipped to any person suing for the same."

Chapter 520 of the Acts of 1891 amends section 1967 of The Code by striking out the penalty of twenty-five dollars, and providing that the railroad company shall pay "to the party aggrieved double the loss or damage actually sustained by reason of said freight so remaining unshipped."

Chapter 634 of the Acts of 1901 repealed chapter 520 of the Acts of 1891, and re-enacted section 1967 of The Code, amending it, however, changing the penalty of twenty-five dollars per day to five dollars per day and all actual damages, both penalty and damages being recoverable only by the aggrieved party. The amount of penalty is erroneously printed in the volume of the Laws of 1901, as five hundred dollars, instead of five dollars as it is in the original act.

Section 3 of chap. 590 of the Acts of 1903, is as follows: "That it shall be unlawful for any railroad company, steamboat company, express company or other transportation company doing business in this State to omit or neglect to transport any goods or merchandise received by it and billed to or from any place in this State for shipment for a longer period than four days after the receipt of the same, unless otherwise agreed upon between the company and the shipper, or unless the same be burned, stolen or otherwise destroyed, or to allow any such goods or merchandise to re-

main at any intermediate point more than forty-eight hours, unless otherwise provided for by the Corporation Commission. Each and every company violating any provision of this section shall forfeit to the party aggrieved the sum of $25 for the first day and five dollars for each and every day of such unlawful detention thereafter, in case such shipment is made in car-load lots, and in less quantities the forfeiture shall be twelve dollars and fifty cents for the first day and two dollars and fifty cents for each succeeding day; provided the forfeiture shall not be collected for more than thirty days." Section 5 of said chapter is as follows: "That all laws in conflict herewith are hereby repealed and that this act shall be in force from and after its ratification." This act does not expressly affect pending suits and it cannot do so by implication.

Section 3764 of The Code, in chap. 59, relating to the repeal and construction of statutes, is as follows: "The repeal of a statute shall not affect any action brought before the repeal for any forfeitures incurred, or for the recovery of any rights accruing under such statute."

The principle governing the application of statutes creating a cause of action where none existed before have been well settled in this State. Of course where the statute has been repealed, and there has been no assertion or attempted assertion of any right thereunder prior to such repeal, all right of action is necessarily destroyed. This is too well settled to require any citation of authority and is universally recognized.

Where the right has been asserted during the life of the statute, as for instance an action instituted to recover a penalty, the plaintiff acquires an inchoate right subject to be defeated by express legislative action. *Dyer v. Ellington,* 126 N. C., 941. Where the statute is simply repealed and no allusion is made to pending actions, the inchoate rights

therein acquired are not interfered with, but may be prosecuted to a final recovery. The Code, sec. 3764; *Wilmington v. Cronly*, 122 N. C., 388. Where suit is brought during the life of the statute and pending at its repeal, without having gone to judgment, the Legislature may by express terms take away the right of action. *Dyer v. Ellington, supra.* When the plaintiff has obtained a judgment for the penalty before the repeal of the statute, he has a vested right therein which cannot be taken away by the Legislature. *Durham v. Anders*, 128 N. C., 207, 83 Am. St. Rep., 668.

In *Dyer v. Ellington, supra*, on page 944, quoted with approval in *Durham v. Anders, supra*, on page 210, this Court says: "An informer has no natural right to the penalty, but only such right as is given to him by the strict letter of the statute. It is not such a right as is intended to be protected by the act, but is one created by the act. He has in a certain sense an inchoate right when he brings suit, that is, the bringing of the suit designates him as the man thereafter exclusively entitled to sue for that particular penalty; but he has no vested right to the penalty until judgment. Until it becomes *vested,* we think it can be destroyed by the Legislature. * * * If the penalty had been reduced to judgment, or had been given to the party in the nature of liquidated damages, the case would be essentially different."

Cooley in his work on Constitutional Limitations says, at p. 443: "So, as before stated, a penalty given by statute may be taken away by statute at any time before judgment is recovered." But the same distinguished author says, at page 443: "But a vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference."

This action was brought on the 10th day of February, 1903; while chapter 590 of the Acts of 1903 was ratified

on the 9th day of March, 1903. It was therefore brought under the act of 1901, the only act then in existence, and was not interfered with by the act of 1903, which makes no reference to pending cases. In fact, the act of 1903 does not profess to repeal the act of 1901 in express terms, as it makes no allusion thereto. Its only repealing clause is section 5, providing "that all laws in conflict herewith are hereby repealed." Given their widest possible latitude, these words cannot be construed to interfere with pending cases. The defendant, while professedly approving of the statutory imposition of penalties which it says was "made for an honest purpose," insists upon such a construction as would defeat any practical purpose. The nature and essential purposes of statutory penalties are ably and elaborately discussed by *Justice Rodman,* speaking for the Court in *Branch v. Railroad,* 77 N. C., 348, wherein he says, on page 349: "The principle is this, 'When private property is devoted to a public use it is subject to public regulations.' And this is more especially true when the owner has either a legal or a virtual monopoly of the business in which the property is used. This principle has immemorially in England, and in this country from its first settlement, been assumed in acts of the several Legislatures, prescribing charges of innkeepers, ferrymen and other public carriers, public wharfingers, warehousemen, etc. The Acts of 1798 (Revised Code, chap. 79, sec. 3), as to ordinaries and innkeepers authorized the county courts to rate their prices for liquor, diet, lodging, provender, etc. The Act of 1779 (Revised Code, chap. 101, sec. 27) regulates in like manner the tolls at public ferries and the Act of 1777 (Revised Code, chap. 71, sec. 61) the tolls at public mills. The constitutionality of these acts has never been questioned, but they have been always regarded as wise and politic exercises of the police power of the State. There can be no dis-

tinction in principle between the power to enact those acts and the one in question in this case. Of course it cannot affect this case that the defendant is a corporation. Corporations, like all other persons, are subject to the police power of the State. There is no exemption in this respect in the charter of the company. It was granted great privileges in consideration of the performance of certain duties to the public. It enjoys a virtual monopoly of the carriage of freights within a certain distance on each side of its line across nearly the entire breadth of the State. It enjoys through the proverbial 'wisdom of the Legislature' the privilege of having its property exempt from the general burden of taxation. There could not be a clearer case of property devoted for a valuable consideration to a public use, and consequently subject to public regulation. That the regulation in question is within the scope of the police power of the State seems clear to us. A common carrier is bound by the common law to convey goods committed to him for that purpose within a reasonable time, and, on failure, is liable in damages. The Legislature considered the common law liability as insufficient to compel the performance of the public duty. It must have thought that the interests of local shippers, for whose interest principally the road was built and against whom the company had a complete monopoly, were being sacrificed by wanton delays of carriage in order that the company might obtain the carriage from points where there were competing lines by land and water, as from Wilmington or Augusta. It declared, therefore, that the maximum of delay should be five days after a receipt for carriage, and imposed a penalty for every day's delay beyond. *The act does not supersede or alter the duty or liability of the company at common law. The penalty in the case provided for is superadded. The act merely enforced an admitted duty.*" (Italics ours).

The defendant also lays stress upon the difference between the value of the goods and the amount of the penalty recovered. In the well-known case of *McGowan v. Railroad,* 95 N. C., 417, known as the "Rice case," the plaintiff recovered over $3,000 in penalties for allowing twenty-seven bags of rice to remain unshipped from Mt. Olive to Goldsboro from the 21st day of November, 1884, to the 21st day of March, 1885. In *Carter v. Railroad,* 126 N. C., 437, this Court, in discussing the kindred sections of The Code, secs. 1764 and 1767, says, on page 440: "The object in providing a penalty is clearly to compel the common carrier to perform its duty to the public, not simply to the abstract public, but to each individual. Penalties are made cumulative so as to make it under all circumstances, as far as practicable, to the interest of the carrier to perform its duty. Punishment and compensation are essentially different. The one aims merely to repair the injury done; the other, to prevent its recurrence. Compensation should, under all circumstances, exactly equal the injury; while punishment, to be effective, must exceed the injury, or at least be greater than any possible benefit which can accrue to the offender from a violation of the law. Suppose a large number of cattle were offered for shipment, it might be cheaper for the carrier to pay a penalty of fifty dollars than to go to any extra expense or trouble to obtain the necessary cars."

As we see no error in the trial of the case, the judgment of the Court below is

Affirmed.