WALKER v. RAILROAD.

(Filed December 13, 1904).

1. CARRIERS—*Penalties—Acts 1903, chap. 590.*

   The act providing a penalty for a delay of four days in the transportation of goods refers to a delay in starting the goods from the station of their receipt, and does not require a delivery at their destination within the time specified.

2. CARRIERS—*Penalties—Burden of Proof.*

   In an action against a railroad company to recover a penalty for a delay of more than four days in the transportation of goods the burden of showing where the delay occurred is on the plaintiff.

3. COMMERCE—*Interstate Commerce—Penalties—Constitutional Law.*

   An act allowing a penalty for failure of a carrier to ship goods within a certain time is valid.

   CLARK, C. J., and DOUGLAS, J., dissenting.

ACTION by D. M. Walker and another against the Southern Railway Company, heard by *Judge C. M. Cooke,* at May Term, 1904, of the Superior Court of ALAMANCE County.

This action was brought to recover the penalty for failure to transport freight, given by chapter 590, section 3, of the Acts of 1903. Plaintiffs alleged that there had been a delay of four days and demanded judgment for forty dollars, that is, twenty-five dollars for the first day and five dollars per day for the next three days of delay. The material portion of the evidence was as follows: "(1) Bill of lading issued by the defendant, bearing date Cumnock, N. C., May 27, 1903, for a car-load of lumber, to be transported to the defendants at Graham, N. C. J. R. Burns was the shipper. (2) The receipt of the plaintiff for the said freight bearing date Graham, N. C., June 4, 1903."

D. M. Walker, one of the plaintiffs, testified: That he and J. C. Walker constitute the firm of Walker Bros. The witness identified the bill of lading and freight bill hereinbefore referred to and said the dates as therein stated were correct. The plaintiffs operated a saw-mill situated about one hundred and sixty feet from the main line of the North Carolina Railroad Company, some three hundred or four hundred yards east of the station at Graham in Alamance County, and were accommodated by what is ordinarily known as an industrial or spur track, running from the main line into their yards, which are enclosed. When they receive freight by the carload the car is placed by the defendant on this spur track and unloaded in the mill-yard of the plaintiffs. The car in question was delivered to them in their yard on June 4, 1903. The bill of lading was received by the plaintiffs through the mails about May 28, 1903. Plaintiffs made demand upon the agent of defendant at Graham. The spur or industrial track was put in at the instance of the plaintiffs, and operated, as witness supposed, for the accommodation of both the plaintiffs and defendant as the cars could be unloaded sooner. No extra charge was demanded or made against the plaintiffs for shifting and carrying cars from the main track of the defendant into the yard of the plaintiffs by means of the spur track. The cars containing freight for other parties were not put upon the spur track of plaintiffs without their permission, nor carried inside the gate of plaintiffs' yard. The witness did not know of his own knowledge when the car in question arrived at Graham station. The train passed but he did not see it come.

The freight in question was brought in the car from Cumnock by way of Greensboro and from the latter place to Graham. There are four stations or stops between Greensboro and ten stations between Greensboro and Cumnock. The 31st day of May, 1903, was Sunday. Witness made demand

on the railroad company for the car of freight in question and at that time the car had not arrived in Graham.

It was admitted by the parties that the defendant transported freight and passengers through several States, including this State, and is engaged in interstate commerce, and it was admitted that Cumnock and Graham are stations on different roads, both of which are operated by defendant within this State.

Plaintiffs here rested their case. The defendant thereupon moved to nonsuit the plaintiffs under the statute, which motion was allowed and judgment was rendered accordingly. Defendant excepted and appealed.

*Long & Long,* for the plaintiffs.
*F. H. Busbee* and *King & Kimball,* for the defendant.

WALKER, J., after stating the facts. It is provided by the Act of 1903, chap. 590, sec. 3, that any railroad company failing to transport goods received by it for shipment and billed to any place in this State for a longer period than four days after the receipt of the same, unless otherwise agreed between the parties, or allowing such goods to remain at any intermediate point more than forty-eight hours, shall pay to the party aggrieved a penalty of twenty-five dollars for the first day and five dollars for each succeeding day of unlawful delay or detention, if the shipment is in car-load lots, and if in smaller quantities, then a less sum, which is prescribed by the act. The plaintiffs claim that by the statute the defendant is allowed only four days to make the shipment and any delay beyond that time subjects it to the penalty. We do not think that is the proper construction of the law. The word "transport" does mean to carry or convey from one place to another, but it also means to "remove," and this is one of its primary significations according to the lexicographers.

Whatever may be the precise meaning of the word when considered by itself and apart from the special connection in which it is used, the context of the act under review clearly shows that the Legislature did not intend to be understood as requiring the entire transit to be made within four days from the receipt of the goods. Such a construction might produce serious results and impose upon transportation companies, not only a very onerous duty but one which, in some cases, it would be difficult, if not impossible, to perform. It has been said that in regard to laws, as in other cases, difficulties will arise, in the first place from the disputed meaning of individual words, or as it is usually expressed, of the language employed, and, in the second place, assuming the sense of each separate word to be clear, doubt will result from the whole context. This is due in large measure to the imperfection of language and its inadequacy in conveying our meaning. We must, therefore, regard the context and the general scope of the law as well as the mischief to be suppressed and the remedy provided for that purpose so as to arrive at the intention of the Legislature. "When we see what is the sense that agrees with the intention of the instrument (or statute), it is not allowable to wrest the words to a contrary meaning. No text imposing obligations is understood to demand impossible things." Sedgwick Stat. & Const. Law (1857), chap. 6, pp. 225-235. Whenever the intention can be discovered it ought to be followed with reason and discretion in construing the statute, although it may not seem to conform to the letter. Sedgwick, *supra.* We have no doubt as to the true intention of the Legislature in passing this act. The very phraseology of the statute indicates clearly the purpose that the penalty shall be incurred if the company delays to begin the transportation or to start the goods on their journey within four days after they are received for shipment. The fact that the law provides against unreasonable

delay during the course of the transportation at any inter-
mediate station, is conclusive evidence that the neglect or
omission to transport for a longer period than four days re-
fers to a delay at the initial point or the place of departure.
To hold it to have been contemplated that four days only from
the time of receipt should be allowed for the shipment of
the goods and their delivery at the place of final destination,
would impute to the Legislature an intention to adopt a harsh
and impracticable rule, and therefore an unreasonable one, as
the time allowed might not be sufficient in many cases for
the transportation as thus understood.    Having concluded
that the four days must apply to the time of shipment, we
find no evidence as to when the goods left Cumnock nor as to
when they reached Graham, and, even if there had been such
evidence we have failed to discover any proof as to the dis-
tance between Cumnock and Graham, or as to the time rea-
sonably required to carry the goods from the one place to the
other.    The burden was on the plaintiff to bring forward the
proof necessary to establish his allegations and to make out
his case, and in the absence of evidence we can raise no pre-
sumption in his favor.    If the defendant has violated the law
and incurred its penalty the plaintiff must show it affirma-
tively.    There is not in this case the slightest evidence as to
the essential fact to be proved.    The plaintiff in the case of
a nonsuit is entitled to have the benefit, not only of every
fact which the evidence tends to prove, but of every legitimate
inference from the facts as well, but this does not mean that
he will be permitted to recover upon mere conjecture.    The
Court did not err in refusing to submit the case to a jury as
there was a total failure of proof.    The nonsuit was properly
entered.

   In the answer the defendant sets up as a defense the uncon-
stitutionality of the act upon the ground that it interferes
with interstate traffic.    We were told by counsel in the argu-

ment before us that this defense was not relied on in the Court below, nor did he insist upon it in this Court. We think the point was properly abandoned. The act cannot be successfully assailed upon this ground. It has been thoroughly settled that such legislation does not contravene the commerce clause of the Constitution. The most recent decision of this Court upon the subject is *Currie v. Railroad,* 135 N. C., 535. But other decisions on the point are abundant. *Bagg v. Railroad,* 109 N. C., 279, 14 L. R. A., 596, 26 Am. St. Rep., 569; *Smith v. Ala.,* 124 U. S., 465; *Railroad v. Fuller,* 84 U. S., 560; *Sherlock v. Alling,* 93 U. S., 99; *Railroad v. Dwyer,* 75 Tex., 572, 7 L. R. A., 478, 16 Am. St. Rep., 926. Numerous authorities sustaining the right of the State to pass such a law are collected in the cases we have cited. Legislation of a State which incidentally or indirectly affects commerce between the States, and especially such as is passed in the exercise of the police power, are not to be considered regulations of that commerce, within the meaning of the Constitution of the United States. Besides all this, it appears in our case that the traffic was to be conducted wholly within this State and it cannot, therefore, in any allowable view be regarded as interstate trade, nor can the statute, in so far as it affects that traffic, be held invalid as an attempt to usurp the power of Congress to regulate interstate commerce.

In deciding this case we have confined ourselves, as we should do in all cases, to the facts as they appear in the record. We have no right to supply any defect in the plaintiff's proof by assuming the existence of any fact which the testimony does not tend to establish. If the plaintiff has a good cause of action against the defendant, he must show it by legal evidence and not leave anything essential to its completeness to surmise or conjecture. This must be required of him and all others similarly situated, as we cannot in any

other way decide safely, and with a due regard for the rights and interests of litigants which must be determined by well-settled methods of judicial procedure applicable alike to all cases, and not by any arbitrary or capricious notion of what should be done in any particular case in order to mete out justice. By pursuing the latter course we would often base our judgments upon mistaken or misunderstood facts, and defeat the very purpose intended to be accomplished in all judicial investigations.

No Error.

Douglas, J., dissenting. I am not disposed to dissent from the principles of law so ably laid down by the Court in its opinion, as far as I understand them; but I fail to see the legal or logical connection between its premises and its conclusion. I do not think that the primary meaning of the word "transport" is simply to remove. It is from the Latin word *"transportare,"* compounded from the words *"trans,"* meaning over or beyond, and *"portare,"* to carry. It does not mean simply to remove from one place, but includes also the idea of carrying to another place. And yet I agree with the Court that the Legislature did not intend to impose the penalty where the transportation was begun, but not completed within the four days mentioned in the statute. To my mind its clear intention was that the transportation should be *begun* within four days, that is within ninety-six hours after receipt of the goods, and should be continuously carried on and completed within a reasonable time. It certainly did *not* mean that the railway company could lawfully leave the goods at the initial point for four days, then transport them a mile or so and leave them there for forty-eight hours, and then transport them another mile or so with another forty-eight hours delay, and so on for perhaps a month. Neither did it mean that the railway company could keep

the goods for a week or a month, and then say to the owner "prove if you can where the goods have been all this time." The railway company alone knows where they have been, and alone has the means of proving it. To place the burden of directly proving it upon the plaintiff deprives him of all remedy for a substantial injury under guise of a rule of evidence. If the circumstances tend to prove the plaintiff's case it should be left to the jury, who alone can say what they do prove. If circumstantial evidence is sufficient to hang a man, I do not see why it is not sufficient in a civil suit to fasten upon a common carrier the just responsibility resulting from its breach of public duty.

The opinion of the Court says: "There is not in this case the slightest evidence as to the essential fact to be proved." I presume it refers to the delay at Cumnock. Let us see about that. There is evidence that the car-load of lumber was received for shipment by the defendant on May 28, and was delivered to the plaintiffs on June 4, seven days thereafter. It is also in evidence that both Cumnock and Graham, the terminal points of the shipment, are within this State, and on roads operated by the defendant, and that there was only fifteen stations between them. Allowing ten miles as an average between stations, but which is much above the average, there would be only one hundred and fifty miles of transportation, which, at twenty miles per hour, would require only seven and a half hours. I do not know to what extent this Court will take judicial cognizance of the geography of its own State. If it takes any we will know that Cumnock is in Chatham County on the Sanford and Mount Airy branch of the Southern Railway fifty-four miles south of Greensboro, and Graham on the North Carolina division of said railway twenty-three miles this side of Greensboro. The entire distance between Cumnock and Graham would therefore be seventy-seven miles. It seems to us that, with or

without such judicial cognizance, under the circumstances in this case, the fact that seven days elapsed between the receipt and delivery of this lumber is sufficient evidence from which the jury might reasonably infer that it was not transported from Cumnock within the four days allowed by law. It is difficult to believe that it would require three days to transport an unbroken car-load seventy-seven miles, or that *one mile per hour* is a reasonable rate of speed over the greatest trunk line of the South. If there are other facts tending to exculpate the defendant they are peculiarly within its own knowledge and should be alleged and proved by it.

CLARK, C. J. concurs in the dissenting opinion.