STONE & CO. v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 3 April, 1907).

1. Nonsuit—View of Evidence.—An appeal from a denial of motion for nonsuit entitles defendant in the Supreme Court to urge any view of plaintiff's evidence which involves the right to maintain the action.

2. Statute—Penalty—Facts—Amendment.—In a warrant to recover a penalty under a statute, an averment alone that the amount claimed is "due by penalty," without stating the facts or pointing out the particular statute under which the penalty is claimed, is insufficient, but the Judge below may allow an amendment in his discretion.

3. Same — Railroads — Transport — Reasonable Time—Declaratory. Section 1467, Revisal 1905, making it unlawful for certain classes of carriers operating in this State to omit or neglect to transport, within a specified reasonable time, any goods, etc., received by it for shipment from or to any point in the State, unless otherwise agreed upon, or unless the same be burned, stolen or otherwise destroyed, is declaratory of the common law, and does not exclude any defense as to delay in transportation that could properly be made thereunder, the burden of proof being upon defendant to show reasonableness in delays beyond the ordinary or reasonable time prescribed.

4. Same—Rules of Evidence—Enforcing Common-law Duty.—Section 1467, Revisal 1905, fixing a time limit within which the transportation of goods, etc., by certain carriers shall be *prima facie* reasonable, and beyond which *prima facie* unreasonable, changes the rule of evidence alone, and the penalty imposed is solely to enforce a common law and admitted duty, and is within the legislative authority.

5. Same—Consignor and Consignee—Owner of Shipment—Revisal, Sec. 1467.—When goods are delivered to a common carrier for transportation and bill of lading issued, the title, in the absence of any direction or agreement to the contrary, vests in the consignee, who is alone entitled to sue as the "party aggrieved" for the penalty given by section 1467, Revisal.

CLARK, C. J. dissenting.

CIVIL ACTION, tried before *Jones, J.,* and a jury, at the December Term, 1906, of the Superior Court of NEW HANOVER County.

This was an action prosecuted by the plaintiffs for the recovery of the penalty incurred by defendant for failure to transport freight within a reasonable time, pursuant to sec. 2632, Revisal. The action was instituted in a justice's court and brought by appeal in the Superior Court of New Hanover. The plaintiffs introduced a bill of lading issued by defendant at Wilmington, N. C., showing shipment by Stone & Co. to Williamson & Brown Sand and Lumber Co., at Cerro Gordo, N. C., for one car-load of hay.

B. O. Stone, one of the plaintiffs, testified: "Cerro Gordo is on the line of Atlantic Coast Line Railroad Co., and about ninety miles from Wilmington. We shipped this car of hay April 20, 1906, to Williamson & Brown Sand and Lumber Co. They were anxious for the hay. In consequence of information, I went to the Atlantic Coast Line Railroad depot and made inquiry of Mr. Graham, chief clerk to local freight agent. I was referred by him to freight agent. He said that he had looked up this car and found it in the yard; it was out of repair and would have to be repaired, and he would endeavor to get it off next day. This was 10 May, 1906. * * * " The Williamson & Brown Sand and Lumber Co. paid Stone & Co. in full for the hay after delivery. There was no other evidence. Defendant moved for judgment of nonsuit. Motion denied. Defendant excepted. The Court instructed the jury to find for plaintiffs, explaining to them the method of calculating the number of days for which plaintiffs were entitled to recover. Defendant excepted. Judgment and appeal.

*Thomas D. Meares, Jr.,* for plaintiff.
*Davis & Davis* for defendant.

CONNOR, J., after stating the case: The motion for judgment of nonsuit entitles the defendant to urge in this Court

any view of the plaintiff's testimony which involves his right to maintain the action. It was, therefore, open to defendant to insist, in this Court, as it does in the well-considered and interesting brief of counsel: 1. That the statute, upon the provisions of which this action is based, is invalid for the reasons assigned. 2. That, if valid, the plaintiffs do not bring themselves within its terms. Other questions are raised by exceptions to rulings of his Honor during the trial. These we do not deem it necessary to discuss, as, in our opinion, the appeal must be disposed of upon the motion for judgment of nonsuit. It may not be improper, however, to say that we think his Honor had the power, and properly exercised it, to allow the amendment to the warrant. Revisal, sec. 1467. The original warrant was defective in that it neither stated the facts upon which the penalty was alleged to have accrued, nor made any reference to the statute. To simply say that the amount claimed is "due by penalty" is insufficient. The complaint was in the same language. *Scroter v. Harrington,* 8 N. C., 192; *Wright v. Wheeler,* 30 N. C., 184. The complaint, which in the justice's court may be oral, should, at least, inform the defendant what omission of duty he is charged with or under what statute the penalty is claimed. The defendant insists that the statute is invalid because it is not within the police power vested in the Legislature. It concedes that this Court has recognized the validity of similar statutes imposing penalties upon common carriers for failing to perform their public duty, but says that the question was not considered, and that, in the last case (*Walker v. Railroad,* 137 N. C., 168), the reference to it was *obiter.* In *Branch v. Railroad,* 77 N. C., 347, being the first case in this Court in which an action was brought to recover a penalty for failing to ship goods, *Rodman, J.,* discusses the validity of the statute and holds that it is clearly

within the police power, citing *Munn v. Illinois,* 94 U. S.,
113. This case was followed in *Katzenstein's case,* 84 N. C.,
694, *Keeter's case,* 86 N. C., 348, *Whitehead's case,* 87 N.
C., 260, *McGowan's case,* 95 N. C., 417, and *Walker v.
Railroad,* 137 N. C., 168, and many others. The validity
of such legislation has been uniformly sustained in State
and Federal Courts, and Mr. Rose in his exhaustive note
to *Munn's case* says that the question is "too well settled to
be longer the subject of controversy." Notes, vol. 9, 26.
That certain expressions in the opinion in that case have been
criticised, and to some extent modified, is conceded, but the
fundamental principle upon which the power of the State to
regulate the conduct of all public service corporations in the
discharge of their duties, and prescribe penalties for failure
to discharge them is founded, is not only unshaken but more
firmly established by each declaration of the courts. Freund
Police Power discusses the question in all of its aspects.
Defendant insists that, conceding the power to rest in the
State, the statute (Rev., 2632) imposes unreasonable bur-
dens on the carrier and urges upon our attention the case of
*H. & T. C. Ry. v. Mayes,* 201 U. S., 321. We think that
counsel inadvertently fail to note the distinction between the
statute there under discussion and that under which this
action is prosecuted. The point upon which the decision of
that case rested was that the statute, "when applied to inter-
state commerce, was void as a violation of the commerce
clause of the Federal Constitution." It is true that *Justice
Brown* says that the statute, upon which the action is brought,
"is not far from the line of police regulation," and expresses
the opinion that it falls on the "wrong side" of the line. The
decision is confined to its interference with interstate com-
merce. There the stock was shipped from a point in Texas
to Red Rock, Okla. It may be that, if the Court was called

upon to pass upon the validity of the statute as a police regulation, it would have held that by giving to it a "reasonable construction," thereby avoiding the difficulties and hardships pointed out, it would have been upheld, as this Court did in *Whitehead v. Railroad*, 87 N. C., 255. However this may be, the statute under which this action is brought does not impose any "hard-and-fast rule" on the carrier. It has always been the common-law duty of a carrier to receive and safely transport and deliver, within a reasonable time, all freight tendered it for that purpose at a proper time and place and in proper condition. In respect to the safe delivery, it is an insurer, except "against the acts of God and the King's enemy"; but as to the time of delivery, the measure of liability is defined to be "reasonable." *Boner v. Steamboat Co.*, 46 N. C., 211; *Foard v. Railroad*, 53 N. C., 238; *Alexandre v. Railroad*, 143 N. C., at this term. The latest work on the subject says: "The general rule in reference to the liability of a carrier for delay in the transportation and delivery of goods is that it is required to exercise due care and diligence to guard against delay and to forward the goods to their destination with all convenient dispatch and deliver them promptly." Moore on Carriers, 238. Another author of standard authority states the rule with the additional words "with such suitable and sufficient means as he is required to provide for his business, which is commonly defined as a reasonable time. This duty to carry within a reasonable time is one engrafted, by the law, upon the principal contract, which is to carry safely." 2 Hutchinson Carriers (3 Ed.), sec. 651. In the next succeeding section some of the factors and conditions which may be taken into consideration, in ascertaining what, in any case, is a reasonable time are pointed out, and in other sections such conditions and circumstances as will excuse delay—citing a number of decided

cases.  Such being the common-law duty of the carrier, does the statute in this respect make any change in regard to it?  The language is: "It shall be unlawful for any railroad company, steamboat company, express company or other transportation company doing business in this State to omit or neglect to transport, within a reasonable time, any goods, etc., received by it for shipment and billed to or from any place in the State of North Carolina, unless otherwise agreed upon, or unless the same be burned, stolen or otherwise destroyed," etc.  For a violation of the duty imposed a penalty is given to "the party aggrieved."  It is further provided: "In reckoning what is reasonable time for such transportation, it shall be considered that such transportation company has transported freight within a reasonable time if it has done so in the ordinary time required for transporting such articles of freight between the receiving and shipping station; and a delay of two days at the initial point and forty-eight hours at one intermediate point for each hundred miles of distance or fractions thereof over which said freight is to be transported shall not be charged against such transportation company as unreasonable and shall be held to be *prima facie* reasonable; and a failure to transport within such time shall be held *prima facie* unreasonable."  As we have seen, the duty imposed by the statute to transport within a reasonable time is but declaratory of the common-law and the definition of reasonable time as "the ordinary time required," etc., does not shorten the time because the "ordinary time" within which an act is to be done is "the regular—customary— usual" time (21 Am. and Eng. Enc. Law, 1007), and is synonymous with "reasonable time," being "as soon as the party conveniently could."  *Murry v. Smith,* 8 N. C., 41. Two days are allowed, or "shall not" be charged at the "initial point," and "forty-eight hours at each intermediate

point for each hundred miles or fractions thereof." To this extent the statute lowers the standard of duty because it is by no means clear that so much time would be given, under all circumstances, as reasonable. The last sentence in the statute is not very clear "and a failure to transport within such time shall be held *prima facie* unreasonable." These words cannot refer to time which "shall not be charged," because to do so would be contradictory and destructive of the immediately preceding sentence. No rule of construction would permit this to be done. It is our duty first to reconcile all apparently conflicting language in a statute, and, failing in this, to reject that portion which is so contradictory as to destroy the intention of the Legislature as manifested in the general terms of the act. We think that the last sentence should, therefore, be referred to the terms "ordinary time," thus making the act to read, "a failure to transport within ordinary time shall be held *prima facie* unreasonable." While we think such would be the law without the concluding words of the section, this construction gives to them a declaratory effect. That it is within the power of the Legislature to make acts or conduct *prima facie* evidence of the fact in issue is well settled. *State v. Barrett,* 138 N. C., 630. The only other point discussed before us upon which the validity of the statute was attacked is that the words "unless the same be burned, stolen or otherwise destroyed" imposes the imperative duty to transport, permitting no relief for the acts of God or the public enemy," unforeseen and unavoidable causes. We do not think the statute capable of such construction. While in the exercise of the police power large latitude is given the Legislature, and the courts are reluctant to interfere, they have never hesitated to do so when the statute imposes burdens impossible to be borne or duties impossible of performance, as

said by *Justice Walker* in *Walker v. Railroad,* 137 N. C., 163: "No text imposing obligations is understood to demand impossible things." We should be slow to find in the language of a statute the imposition of a penalty for the omission to perform a duty, the standard of which is fixed *by the law, which did not, either in terms, or by necessary intendment, except from its operation causes which a high degree of foresight and precaution could not anticipate or prevent. Without going beyond the terms of this statute, we find a clear recognition of the elementary principle of justice that no obligation is to be imposed to do impossible things. The penalty is imposed for failure to transport within a "reasonable time"; because an exception is made— "when otherwise agreed," or where the goods are "burned, stolen or otherwise destroyed"—it is not to be supposed that in all other respects an arbitrary "hard-and-fast" rule is prescribed. These are exceptions to the general rule of "reasonable time," and cannot be construed to impose any higher duty or greater burden than are imposed by the general rule. Again, quoting the well-considered language of *Justice Walker* in regard to the construction of this statute: "We must regard the context and the general scope of the law, as well as the mischief to be suppressed and the remedy provided for that purpose, so as to arrive at the intention of the Legislature." We do not find in the language of the statute any indication of an intention to require common carriers to transport freight in any other than a reasonable time or any purpose, as in section 1967, Code, to fix the time at any specific number of days. It would be impracticable to do so in regard to transporting goods. Eliminating the time "not charged," the standard of "reasonable time" fixed is "ordinary time." The question whether, in the light of the distance, and all other conditions proper to be considered,

the transportation is made within such time, would be for the
jury. "Each case must be referred to its own peculiar cir-
cumstances, having regard to the mode of conveyance, nature
of goods, season of the year, character of the weather and
the ordinary facilities for transportation under the control
of the carrier." *N. & M. R. R. v. Ragsdale,* 46 Miss., 458.
The cases illustrating the principle may be found collected
in 5 Am. and Eng. Enc., 245; 6 Cyc., 442. The burden of
proof to show the conditions preventing the transportation
within the ordinary time required for carrying the goods
would be on the defendant, the statute expressly making such
failure *prima facie* evidence of unreasonableness. As said
by *Rodman, J.,* in *Branch's case, supra:* "The Legislature
considered the common-law liability insufficient to compel
the performance of the public duty. * * * The act does
not supersede or alter the duty or liability of the company
at common law. The penalty in the case provided for is
superadded. The act merely enforces an admitted duty."
We are all, therefore, of the opinion that the statute is
clearly within the police power and is reasonable in its pro-
visions.

The defendant says, however this may be, the plaintiffs
are not the parties "aggrieved," who alone are entitled to sue.
It is undoubtedly true that in the absence of any suggestion
that the goods were not shipped "open," the delivery to the
carrier taking a bill of lading to the consignee, vests in the
consignee the title to the goods, making the carrier liable
to him for failure to transport and deliver. *"Prima facie*
the consignee is the owner of the goods in transit, the prop-
erty therein vesting in the consignee upon delivery to the
carrier, the latter being commonly the agent of the con-
signee, and he only can sue the carrier for non-delivery,
though a receipt was given to the consignor. The carrier is

entitled to consider and bound to treat the consignee as such
owner, unless it is advised that a different relation exists,
or unless notice of such fact is to be implied from the man-
ner of shipment, as when the goods are sent C. O. D."
Moore on Carriers, 188; Tiffany on Sales, 195; *Crook v.
Cowan,* 64 N. C., 743; *State v. Patterson,* 134 N. C., 612;
*Ober v. Smith,* 78 N. C., 316. ·This we do not understand
to be denied, but it is contended that there is evidence in the
record from which a jury could infer that the plaintiff re-
tained some interest in the goods, or was not to receive pay-
ment until delivery, and that therefore they were "aggrieved"
by the failure to transport within a reasonable time, bring-
ing the case within the principle announced in *Summers v.
Railroad,* 138 N. C., 295. *Mr. Justice Hoke* says in that
case: "Ordinarily, in case of a shipment of goods by a
railway to a person who has ordered them on delivery to
the railway, the company receives them as the agent of the
vendee or consignee, and such person would be the aggrieved
party by delay in forwarding. But in this case, by the
terms of the agreement between the plaintiff and W. & Son,
the plaintiff was not getting credit for the returned goods
until they were received by W. & Son." In *Grocery Co. v.
Railroad,* 136 N. C., 396, it was expressly stated in the
bill of lading: "Destination, Franklinville, N. C. Con-
signee's address as information only, and not for purpose
of delivery." There of course the failure to ship "aggrieved"
the consignor; the goods remained his property, thus fall-
ing within the exception to the general rule. In *McGowan's
case, supra,* and other cases under section 1967 of The Code,
the question could not arise because the penalty was given to
"whoever should sue for same." The only evidence throw-
ing any light on the question is, "they (the consignees) were
anxious for the hay, they had paid in full for the hay after

delivery." We fail to see how any inference could be drawn from this testimony, taking the case out of the general rule by which the title vested in the consignees, and that for failure to ship they were the parties aggrieved. It is manifest that the statute does not contemplate that two penalties should be recovered for the same breach of duty; it is equally manifest that upon this evidence the consignee may sue. We should not regard the last proposition open to debate, and certainly by the same process of reasoning the plaintiffs may not maintain the action. A judgment in this case would not protect the defendant from a suit by the consignees. It is suggested that the plaintiffs were out of their money until the delivery of the hay to the consignees. The answer is obvious, there is nothing to indicate the terms upon which the hay was sold. Again, suppose it be conceded that they sold and shipped to be delivered "open" for cash. That is, that although the hay was to be paid for cash, it was shipped "open." Certainly such terms did not prevent title vesting in the consignee by delivering to the carrier. If, therefore, the fact that by reason of the delay the plaintiffs were out of their money twenty days, and thereby were entitled to sue for the penalty as the party aggrieved, it is equally clear that as consignees were during the same time "out of their hay" by reason of the failure of their agent, the carrier, to transport within a reasonable time, and were thereby "aggrieved," so that from this process of reasoning both consignor and consignees were "aggrieved," and could sue for the penalty. The argument proves too much. Again, it is said, "they may have bought also subject to approval." Surely it will not be contended that jurors should be invited to find a fact in regard to which there is not a scintilla of proof. The testimony shows that the consignees are the only parties aggrieved, and therefore entitled to sue. His

Honor therefore erred in denying the motion to render judgment of nonsuit. Let this be certified, to the end that such judgment be entered in the Superior Court of New Hanover County. *Hollingsworth v. Skelding,* 142 N. C., 246.

Error.

CLARK, C. J., dissenting from conclusion: Fully concurring as to the constitutional right of the Legislature to impose penalties upon common carriers for unreasonable delay in the discharge of their duties, and that only one party is entitled to recover the prescribed penalty, it seems to me that whether the plaintiff is an "aggrieved party" upon the facts of this case, was an issue of fact which if raised by plea might have been submitted to the jury, and not a conclusion of law to be determined upon a motion for nonsuit. The statute does not restrict the recovery to the consignee but to the "party aggrieved." Therefore the consignor may be the party aggrieved. Indeed, there are cases, and this may be one of them, in which both the consignor and consignee are "aggrieved." In such cases, though only one party can recover, the recovery may be had by that one of them which first institutes action, just as where the penalty is given to "any one who shall sue for the same."

Here the evidence is that the consignor was not paid till after the long-delayed delivery of the goods, and that such delay caused the consignor, the plaintiff, to go to the trouble to look up the goods. The plaintiff lay out of his money during the delay. There is no evidence that the consignee ordered the goods, or was aggrieved by the delay. But concede that presumedly he was, the above evidence that the plaintiff was also aggrieved should have been submitted to the jury. If both the consignor and consignee were aggrieved, the question is not which was most aggrieved, but which first instituted the action.

The penalty is in the nature of a public regulation to secure the discharge of the duty of delivery of freight without unreasonable delay. The penalty is recoverable by the plaintiff if aggrieved. The above evidence tends to show that the plaintiff suffered some detriment (whether greater than that suffered by the consignee or not is immaterial), and the Judge properly refused the motion to nonsuit. In the recent cases of *Grocery Co. v. Railroad,* 136 N. C., 396, and *Summers v. Railroad,* 138 N. C., 295, the Court sustained a recovery of such penalty by the consignor.

The gist of the action is the "unreasonable delay" by the carrier. Whether the consignor or consignee was most inconvenienced is not material. Either that shows any evidence to that end and first brings the action should be entitled to recover. Unlike the common-law action, it is not necessary to show actual damage.